Next on the calendar, In Re. Application of Furstenberg. Paul versus Furstenberg Finance. Good morning, Your Honors. John Kassane for the appellant. Dr. Jean-Michel Paul. He was the discovery target in the 1782 action. The broad question that we're dealing with here is, should a private party be permitted to investigate whether there's been criminal action in a foreign country when that private party has no civil claim, has no pecuniary interest in it, and there are significant badges that this discovery action is being used for harassment and to coerce a settlement in an unrelated manner. We say it does not, it should not be permitted because it doesn't satisfy the statutory or the discretionary factors. In this case, the first statutory factor is whether there is some type of objective indicium that a foreign proceeding will be brought. In this case, the applicants below submitted their own declaration saying, if we find evidence of a crime, we will report that crime. If we do not find evidence or the evidence exonerates Dr. Paul, we will destroy it. Excuse me, are you on the statutory factor or the discretionary factors? These are the statutory factors first, Your Honor. So can I ask you, before we go too far down this road, what's the status of the proceedings in Luxembourg? They completed? The appellees have put a request for an investigation in which they submitted to the court a supplemental appendix, and as far as we know, nothing has happened since that point. So that's still in stasis? There's nothing. I think that's the commencement of the proceeding that they said they needed discovery to pursue. I understand that's what they argue, but when you take a look at it, what it is, it's a request to investigate. If you look at the last page of that application, it says, please, we request that you investigate these allegations. If you look at that letter, there is no stamp on it that a proceeding has been started. They are not named in it. There is no caption. There's not even a police report associated with it. Simply, as the appellant's expert said, anyone can report a crime. Whether an investigation ensues is a different matter. There's no guarantee that that will happen. So in this case, as far as we know, no proceeding has been started. As far as the objectiveness, when you submit your own declaration saying that you will file something, first of all, whether it's objectively something to be filed is measured from the date that the 1782 proceeding is filed. That's Hornbeam. So the fact that they have a request to investigate is not pertinent at this point. But that's not objective. And the fact that it was conditional, we may bring it or we may not, depends what we find, shows that this was a fishing expedition. They were looking for evidence of a crime. The second statutory factor is whether ... Are you disputing the first? I am disputing the first. The district court understood, said the objectors do not contest that the first statutory requirement is met. The first statutory requirement is that the banks were located in the district. Yeah, that's the first. Yeah, there's three other. There's four altogether. I understand. Are you disputing the first? No, the banks were located in the district. That's what I thought. That's why I asked you to begin with. Are you on the first? And you said yes.  So you're not disputing the first? We're not disputing the first. When are you disputing? The remaining three, that there's a reasonable proceeding that's for use and ... You're not disputing the fourth either? No, that they're interested parties we are disputing as well. In the district court, did you? Yes, we did. He just got ... He misunderstood you? I believe that's correct, Your Honor. Did you correct him when he said that? I believe I did, Your Honor. Do you think so? I believe I did. Take a look at the transcript. But the evidence here is that when you look at what was submitted, there's no guarantee that it's going to be used in any foreign proceeding. It's simply a request for an investigation, and that does not arise to us. And in between the time that we submitted briefs and this oral argument, the district court of Massachusetts looked at a very similar case, and the name of that case was Inri Fagan. It was an application for discovery for a criminal investigation in Nigeria. They actually had a pecuniary interest in that, but it was denied because the investigation was not a proceeding. That's what the district court of Massachusetts held. Well, Judge said the two ... Well, he thought there were two. In any event, when he said the statutory factors were met, is that a finding of fact? No. I mean, it's a decision of law. It's reviewed de novo by this court, the statutory factors. The discretionary factors are more findings of fact, and they're reviewed for abuse of discretion, Your Honor. When he finds they're met, that's a question of law? I'm not talking about interpreting them. Just he finds that they're met. I believe that is a question of law, and that's why it's reviewed de novo by this court. You think we've said that? I'm not sure whether we've said that or not yet. But I know what the standard of review is. The last statutory factor is whether the applicants are interested persons in this. And the fact is that in the lower court, both parties presented experts, and everyone agreed that the applicants could not assert a civil claim. They had no claim for damages. The applicants asserted that, well, if we can bring a criminal complaint with a claim for damages, then we have some participatory rights. But it's clear that from what was submitted, they have demanded one euro of non-pecuniary damages, and they don't specify what those damages are for. They say that the damages are very difficult to calculate. What they were trying to get at is they may have some reputational damages if Dr. Paul is eventually convicted of a crime from their association. That's their argument for damages. But clearly that does not exist now because Dr. Paul and the only one accusing Dr. Paul of a crime are the applicants themselves. Until after he's convicted, how can there be any damages whatsoever? So, you know, clearly these applicants have no pecuniary interest in it. They have no interest in this proceeding. They are prosecuting someone for no reason. When asked at the district court, why are you doing this to counsel for applicants, the counsel said, we're seeking justice. We're seeking justice. These are hedge fund managers. They have a separate dispute with Dr. Paul. And when you look at all the red flags in this case as to what was happening outside of it, first of all, you have, they base their suspicions on a single email. It was a response. A director said in 2015, responded to one of the applicant's emails, did you resign because you thought there was a conflict with Dr. Paul? Oh, yes, I did. No explanation. Not authenticated. And there's significant evidence that this was manufactured. That same, first of all, Dr. Paul did not become a director until 2010. How could he have a conflict of interest in 2009? Second, the director, a year later, wrote to Dr. Paul's employee saying, I give my proxy to Dr. Paul. I trust him implicitly. Then you have the Luxembourg proceeding between essentially the same parties. In that Luxembourg proceeding, the applicants carried on until the day of trial, then dismissed half their claims. The court in Luxembourg found that this was an abusive process, vexatious, designed to harass the essentially same parties here. Then, during this proceeding, the company that Dr. Paul was a director of, Ashram Portfolio Company, was relisting on the London Stock Exchange. The applicants wrote letters to the auditors and to the board of Ashram Portfolio Company during this relisting process. They quoted from the district court in Florida. Those courts were basically taking their assertions, which were in the decision, and using them as facts, saying, applicants assert they can and will file direct criminal action in Luxembourg against Paul. Thus, this court is satisfied that the foregoing proceeding will eventuate. The only purpose for this was to disrupt things, and at this very same time, the applicants have admitted they demanded that Dr. Paul purchase back their shares at multiple times their traded value. They were met for a settlement discussion saying, we'll drop all this if we get paid off. In the face of these types of red flags, it should have been denied. At the very least, Dr. Paul should have been given reciprocal deservery to protect himself from this type of spurious action. Thank you. You reserve a minute for rebuttal, Mr. Kissing. Mr. Gluck? Thank you. May it please the court, Warren Gluck, Holland and Knight, representing applicants and appellees, Firstburg Finance, and Mark Battalion. This is quite a simple case. There's a lot of invective, but this is quite a simple case. The law of this circuit is clear. A party, a complaining party, who has been the victim of a crime may obtain 1782 discovery in connection with the investigation of that crime. The law of the 11th circuit is similarly clear. The appellants here were sanctioned for making the very frivolous arguments that it's making now in Florida. They were hit with attorney's fees. Because Accent Delight is a Second Circuit case, it provides that the exact format of this proceeding in Luxembourg is within the ambit of and there's no way to distinguish it. There's an 11th circuit case called Consortia. So the district court in Florida got this right. The 11th circuit got this right. And Judge Kodal got this right. What this case is about are two hedge fund managers who happen to have a separate dispute with this gentleman who are separately the victims of a crime. And based solely on that separate dispute, there is this invective concerning bad faith and motives, which every court has considered. Every court considered it and rejected it because they were implausible. These were findings of fact. The judge Kodal, Judge Bloom, and the 11th circuit all examined whether the statutory factors are met. In this case, Batalion, what is in that supplemental appendix and it stands for the proposition that not that it moots the entire case, but that there was a good faith basis. In fact, the proceeding eventuated. What that document is is a case in Luxembourg, which has been filed, in which the two applicants are parties. The evidence has been presented. There cannot be a meaningful dispute as to whether they meet the interested party test and whether this case falls within the accident, the light and consortia line of cases. What they're saying is, oh, because they said that they're going to file it, how is that objective indicia of a reasonably filed action? Well, Judge Kodal looked at that and Judge Bloom looked at that. With all due respect, opposing counsel is misrepresenting the representation. What they said was, and their expert, the chairman of the Luxembourg Bar Association, said they can already file this case. They will already file this case. The sole purpose of this exercise is to find, in fact, the smoking gun that was found, that proved the secret ownership. Of course, it was found. They will file, and the only circumstance, the only circumstance in which they will not file is if the evidence completely exonerates. If the discovery from Litai in Florida or this bank discovery completely exonerates. Now, by the time we got to New York, there had been reams of proceedings in Florida, contempt, motions to compel and the like, and, of course, there had been evidence. When we had been frustrated to a substantial degree in Florida. And one of the first things that emerged in the Florida proceeding is the day after the or, excuse me, the month after the Florida proceedings were filed, the shell company that owned Litai changed. The ownership changed. It went from Horo to ALPCAP. So they're mentioning a letter that was sent to the investors in connection with London. Why was that letter sent? Well, it was more of the same. Immediately after the, so immediately after the filing, the ownership of Litai changes. Immediately after the court's discovery order, after the 11th Circuit issued its mandate, all of a sudden the Luxembourg fund shuts down and it's moving to London now under a new name. That's why the letter was sent, and every word of that letter was true. When we talk about this case, we talk about whether the court got it right de novo, whether it interpreted the statutes correctly. We submit that there is no possibility that it did not. The 11th Circuit case is persuasive. They're interested. Excuse me. They're interested. They are parties. The evidence is for use in the foreign proceeding, and it has been submitted. Now, I'd like to just briefly... The foreign proceeding has been submitted, but there's been no movement on it? It's been filed. That statement is categorically rejected. That document, if you look at the French text, it has been filed, and it is hardly surprising. It is moving along at a normal course, and that is a criminal complaint, by the way, with civil damages. It is that stronger type, not the denunciation, which was hypothetically examined and, by the way, also found to be within the ambit. Has the judgment of the district court been stayed? No. Has it been complied with? Yes. It's been complied with, so we got the discovery from the banks, and in fact, the discovery revealed that... What's alive on this appeal? It is a good question. I will say that throughout this case, there has been, at every opportunity, roadblocks, and this we perceive to be one of them, and I did want to hit these statutory factors. A challenge to a discovery order that's been complied with? It's been complied with. The discovery is complete. The Luxembourg matter, excuse me, the Luxembourg criminal complaint with civil damages has been filed. Has the evidence been submitted to the Luxembourg court? It has. It has, and the evidence said exactly what they thought, by the way. It showed wires, hundreds of thousands of dollars at the outset going from the court to Paul, and then the revenue is going to Paul's wife. Is it moot? I don't think it's moot. What would a reversal accomplish? Well, it's an interesting question. We've had this discussion. In theory, the court could determine... Now, I'm not suggesting it should. In theory, the court could determine that the discovery should not have been issued in the first instance and quash it. Now, how that could be enforced... Can you quash a document in evidence in a foreign court? We have discussed this point, and we do think there's an element of silliness to this, just like there was an element of silliness in Florida. How about jurisdiction? We looked at it, and in theory, it has happened, at least in the domestic context. We have not challenged jurisdiction or mootness. We looked at it, and we... So I mean jurisdiction to give that relief. Oh, I don't believe you could force Luxembourg to do something. I think you could issue an order. That's the only consequence of a reversal, and we can't do it. Isn't it moot? I think the applicants could no longer use it, domestically. I imagine domestically. I don't know. We're raising hypotheticals, but I don't know. I don't know what the effect of a reversal would be. We have looked at it. I did want to hit this standard, because it is important... I would have to check what the order says. I honestly don't know as we sit here today. But I did want to address the burden, because I wanted to write it down. We've discussed the de novo review, and it is the interpretation, not the findings. Everything else in this appeal, from the discretionary factors to the alleged bad faith to the request for reciprocal discovery, which was, by the way, denied in Florida, denied by Judge Codal in the first instance, and then denied again on reconsideration, the standard is whether, and I'm sure the Court is aware, on abuse of discretion, whether the decision lacks any rational explanation and is devoid of reasoning. Now, I will submit that if you look at the two orders at issue in this appeal, issued by Judge Codal, it's the order authorizing the discovery, and it's an order denying the motion for reconsideration. He looks at every single point they made. And on every single point, he makes the correct, and what we believe to be the correct findings, factually, in our favor. And so it's not devoid. When they asked for reciprocal discovery, he said, you put it in one line in your brief, and I denied it, as without merit. And then, when they reapplied, he said, by the way, that's the rule, so I'm re-ruling that way, and then he said, even if I'm looking at it, you are pushing reciprocal discovery past the breaking point. You're not entitled to it. You haven't shown how you will use it, and then certainly, you're not allowed to use it in other proceedings. That pushes it past the breaking point. I want to make just a point. That was the reciprocal discovery. There is a lot of invective here. But this case is clear. It was clear at the outset in Florida. Judge Bloom issued the discovery order. It was clear for the 11th Circuit. They issued an opinion within one week of oral arguments. And it was clear before Judge Kodal. The only distinction between this case and Florida was there was a lot of time before the proceeding was filed in Luxembourg, and now it has been. And that time, they said, well, look, it's bad faith. So Judge Kodal, in the supplemental briefing, he said, send me every order that the district court in Florida made, and all the dockets. I want to see this for myself. And so he saw the delay. First motion to compel, second motion to compel, contempt. And that's why we didn't get the evidence, and we didn't even get the deposition that we wanted. Now, here, we got the evidence. It wasn't stayed. And the evidence was a smoking gun. We never needed that Samuel deposition because the evidence was so strong. And that's what this is about. It's some attempt to quash the use of this smoking gun evidence. And I don't see how it would work, but that's what it's about. The proceedings in Florida are complete. The proceedings here are complete. The proceedings in Luxembourg are filed and now in the hands of the prosecutor, and the civil claim is proceeding on a parallel track, and it is what it is. Now, I want to make a point. The Chairman of the Luxembourg Association absolutely says when you're a mere ordinary stockholder, you have to show damages aside from the drop in your stock, which there obviously was. But when you are proving these damages, if you have a special relationship, then you can show separate and apart damages. And here they were partners. Both Firstenberg and then Battalion as an individual class, they were partners. So they absolutely have the moral, economic and reputational damages. And what Judge Kodal said is that this argument about can you have the damages without having a criminal conviction? What he said, I think correctly, is that's for the Luxembourg court to decide. It's been filed, and if they have some magic bullet argument, by the way, that there are no damages, they're free to file a motion to dismiss the civil case. Hasn't been done. I'm not saying they had to by now, but it hasn't been done. It's going on the normal course. And this can be argued that there's nothing here in New York that they are asking for. All they are seeking to do is to harass plaintiffs further, and that's, or applicants further. That's why the reciprocal discovery was denied in Florida. That's why the reciprocal discovery was denied in the first instance here. And then on motion for reconsideration, and on basically every material point here, again, it's the standard of lacks any rational explanation, devoid of reasoning. And Judge Kodal hit every point. Thank you. Mr. Kossain, you've reserved a minute for rebuttal. Yes, Your Honor. This is not moot, because they obtained discovery from 11 different banks. As far as we can tell, they submitted parts of the discovery from two different banks. So there's remaining discovery out there that has not been submitted. We did not get all the exhibits, but that's what we can tell from what we're looking at. There's some evidence that hasn't been submitted. Are you continuing to press the reciprocal discovery? That's correct, Your Honor. And as far as the Florida action, Dr. Paul was not involved in that. And there's significant differences there. First of all, they had not been found guilty of vexatious and abusive process in Luxembourg against Dr. Paul. They had not sent that letter to the board trying to disrupt listing on the London Stock Exchange. You don't just list on the London Stock Exchange the next day because you have a problem. That's something that's planned and planned, and they knew well about it being shareholders. They initially had a civil claim, or thought they had a civil claim in Florida, which they clearly did not have here, and they've admitted that. So those are differences, and it really shows what the purpose of this discovery was. They have filed a request to investigate with the Luxembourg police, with one bureau of non-pecuniary damages, and they continue to press and that's what the situation is. Thank you. Thank you both. We'll reserve decision in this case. I will note for those gathered and for us that the final case on the calendar, United States versus Fabish, is on submission, so we will take that on submission at this point and determine that in due course. The last case on for argument, Donald J. Trump et al. versus Committee on Financial Services et al., we will hear in a few moments. We're going to take a recess at this point and we'll return to hear that last case. Judges of the United States Court of Appeals for the second circuit. Thank you. Please be seated.